UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TONYA GIVENS,<br><br>    Plaintiff,<br><br>v.<br><br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>    Defendant. | C.A. NO. 1:24-CV-10355-MJJ |

### RULE 16.1(d) JOINT STATEMENT

Pursuant to Fed. R. Civ. P. 16 and 26 and Local Rules 16.1, as well as the Court's Notice of Scheduling Conference (Dkt. No. 9), the parties respectfully submit the following Joint Statement:

I. **Agenda for Scheduling Conference**

The parties agree that there is no need for an agenda for the scheduling conference.

II. **Concise Summary Regarding Liability and the Relief Sought**

   A. <u>Plaintiff's Summary</u>

Plaintiff Tonya Givens was an employee (Supervisor) at MIT Medical prior to taking medical leave brought on by emotional and physical distress caused by race discrimination. She brings claims for discrimination under G.L. c. 151B and Title VII as well as retaliation claims under the FMLA. Among other things, Ms. Givens alleges that liability is shown through MIT's racially motivated tactics, including but not limited to MIT's unequal treatment of her based upon race, MIT improperly passing her over for promotions based upon her race (including that the positions went to non-black and white applicants who were less qualified than Ms. Givens), MIT subjecting her to discriminatory statements and conduct, MIT subjecting her to a hostile work

environment, MIT subjecting her to bullying tactics based upon and directed at her race, and MIT failing to compensate her fairly or appropriately based upon race.

Liability under the FMLA is essentially based upon retaliation.  Ms. Givens had been forced to take medical leave due to the ill affects she suffered as a result of the discrimination set forth above.  Ms. Givens reported back to M.I.T. from her Family Medical Leave on January 30, 2024.   Upon her return to work, M.I.T. continued to discriminate and retaliate against Ms. Givens in the same manner as described above.  In addition, M.I.T. failed and refused to pay Ms. Givens for her first day of work and, worse, Ms. Givens was informed that she had been demoted from the Supervisor position that she held prior to her FMLA leave to a "50% Supervisor position, 50% Patient Service Representative Position."  This demotion violated FMLA.  The FMLA entitles an eligible employee to statutory leave during any twelve-month period if the employee has a "serious health condition," 29 U.S.C. §2612(a)(1)(D), which M.I.T. acknowledged Ms. Givens suffered.  Section 2615(a)(1) of the FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."  FMLA interference may arise from Section 2614(a)(1) which provides that "any eligible employee who takes leave . . . shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced…"

In the weeks after her return from FMLA, Ms. Givens was subjected to conduct that evidences an active effort to constructively discharge her by making the continued performance of her duties intolerable and impossible.  *See GTE Prods. Corp. v. Stewart*, 421 Mass. 22, 33-34 (1995); *quoting Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244-1245 (1994).  Ms. Givens claims that an objective assessment of the conditions under which she had been expected to work clearly reflect that the conditions were purposefully made so difficult as to be considered legally and factually intolerable.  *GTE Prods Corp.*, supra at 34.  On or around February 21, 2024, Ms. Givens was constructively discharged from MIT.

As to damages, Ms. Givens's alleges that the racial discrimination and retaliation of MIT has led to psychological trauma and extreme emotional distress for which Ms. Givens was forced to take medical leave from MIT and for which she has sought and obtained counseling through a Licensed Mental Health Counselor.  She also will have a claim to front and back pay, particularly since she has now lost her employment.  Finally, Ms. Givens will seek attorney's fees and punitive damages under the statutes in issue.  These damages have not been reduced to a monetary figure at this time but are likely to exceed $500,000.

    B.  <u>Defendant's Summary</u>

Plaintiff Tonya Givens was hired by MIT Medical as a Clinic Assistant I in Internal Medicine in February 2013.   In September 2021, Ms. Givens applied for the position of Supervisor, Administrative Clinical Operations Department: Primary Care (the "Primary Care Supervisor Position"), and, after an interview, she was selected for the position.  Ms. Given was promoted to the Primary Care Supervisor Position and received a substantial increase in pay.

MIT Medical employed another individual, JN, as a Supervisor, Administrative Clinical Operations Department: Medical Specialties (the "Medical Specialties Supervisor Position").   In August 2022, in recognition of JN's continued high performance in the Medical Specialties Supervisor Position for a period of years, MIT Medical promoted her to the position of Manager, Administrative Clinical Operations: Medical Specialties (the "Manager Position"). Like Complainant, JN is Black.

In January 2023, Ms. Givens filed a charge with the MCAD (the "Charge") in which she alleged that she was discriminated against based on her race when she was not promoted to the Manager Position that had been awarded to JN.  On its face, Ms. Givens's failure to promote claim founders because she cannot show that MIT filled the Manager Position with another individual with similar or lesser qualifications who was not a member of the protected class. *Bosah v. City of*

*Boston*, No. 17-P-862 (Mass App. Ct. Aug. 9, 2019) citing *Somers v. Converged Access, Inc.,* 454 Mass. 582 (2009).  JN shares Ms. Givens's race, and, at the time of her promotion, had greater qualifications and experience than Ms. Givens.

The sole focus of Ms. Givens's Charge at the MCAD was the alleged failure to promote, with no other claim asserted.  Before this Court, however, Ms. Givens alleges that she was subject to a racially hostile environment in MIT Medical, and that MIT Medical retaliated against her for taking leave under the FMLA.  Neither claim has factual or legal merit.

With respect to her hostile environment claim, Ms. Givens asserts that when she pursued the Primary Care Supervisor Position in 2021—*a position that she was awarded*—she was told that she was "rough around the edges."  (Complaint, ¶13).  Even if this isolated comment was uttered and had any bearing on Ms. Givens's race (and MIT disputes both points), the stray comment would not sustain Ms. Givens's hostile environment claim because it is both time-barred and legally insufficient in any event.  *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005) ("The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment"); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (the "mere utterance of an . . . epithet which engenders offensive feelings in an employee" is insufficient, without more, to create an actionable hostile environment).  Perhaps recognizing this deficiency, Ms. Givens has included a more provocative assertion in her Complaint, contending that she had been "subjected to remarks" by unidentified persons "describing certain positions at MIT as being 'for house n******' and other positions at MIT being 'for field n******'."  Complaint, ¶14.  Before filing her Complaint in this Court, however, Ms. Givens had never made any such claim, whether internally at MIT or in her Charge to the MCAD.  Thus, even if the allegation was true (and it is not), it cannot form the foundation of Ms. Givens's hostile environment claim before because it falls outside the scope of her MCAD Charge.  In short, Ms. Givens has failed to exhaust her administrative remedies regarding her hostile environment claim, which is thus barred.

Ms. Givens's claim for retaliation under the Family & Medical Leave Act ("FMLA") is also baseless. Ms. Givens took leave under the FMLA in 2022 and 2023, with MIT's full support. Ms. Givens's 2022 leave followed surgical repair on her rotator cuff, and her 2023 leave was attributed to anxiety, depression, and chronic asthma (with no reference to alleged discrimination). Before Ms. Givens returned from her second leave, she was informed by MIT's Human Resources and Disability Services and Leave Office ("DSLO") that she needed to provide return-to-work clearance (as had occurred after her 2022 leave). On January 30, 2024, Ms. Givens returned to MIT, without having provided the required clearance. A representative of Human Resources reiterated to Ms. Givens that she needed to provide the clearance documentation before returning to work. Ms. Givens contended that she had faxed a doctor's letter earlier that morning to MIT's outside leave administrator, WorkPartners, but WorkPartners reported that they had not received any medical documentation from Ms. Givens or her health care provider (Ms. Givens said that she would not share the letter with the HR representative). The HR representative told Ms. Givens that she could not return to work on January 30, 2024 without clearance, and Ms. Givens left. Later on the afternoon of January 30, 2024, Ms. Givens provided the required clearance from her provider to the DSLO. The next day, January 31, 2024, Ms. Givens resumed work, and she was paid for that day.

Upon returning to work, Ms. Givens's duties and responsibilities were unchanged, but Ms. Givens claimed otherwise a couple of weeks later. MIT (though its counsel) invited Ms. Given (through her counsel) to identify and describe any specific, substantive concerns that Ms. Givens had about her job functions so that MIT could address them. Instead, Ms. Givens quit and claimed that she had been "constructively discharged," which was untrue.

### III. Categories Set forth in Rule 26(f) of Federal Rules of Civil Procedure

**Rule 26(f)(3)(A):** The parties do not believe there should be any changes in the form or requirements for disclosure under Fed. R. Civ. P. 26(a).

**Rule 26(f)(3)(B):** The parties anticipate taking discovery on the subjects relevant to the

claims and defenses raised by the parties in the Amended Complaint and Answer, along with any amended versions of those pleadings. The parties do not believe phased discovery is necessary.

**Rule 26(f)(3)(C):** The parties agree that no party will be obliged to search ESI contained on on-site or off-site backup media or contained in sources that are not reasonably accessible unless both parties agree to the scope of the search or the Court orders otherwise. If either party believes such an order is necessary, the parties will meet and confer in an attempt to resolve the issue, including the issues of cost shifting, before engaging in motion practice relating to such production.

**Rule 26(f)(3)(D):** The parties will comply with the provisions of Rule 26(b)(5) of the Federal Rules of Civil Procedure with regard to issues relating to claims of privilege or protection as to trial-preparation material. The inadvertent production of privileged information will not waive any privilege.

**Rule 26(f)(3)(E):** The parties do not request any changes to the discovery event limitations set forth in L.R. 26.1(c) at this time.

**Rule 26(f)(3)(F):** Each party reserves the right to object to and seek orders in accordance with Rule 26(c) or Rule 16(b) and (c)..

## IV.   Proposed Schedule

Pursuant to the Federal Rules of Civil Procedure and Local Rule 16.1(f), the parties hereby propose the following schedule:

1. **Initial Disclosures.** Initial disclosures required by Fed. R. Civ. P. 26(a)(1) and by this Court's Notice of Scheduling Conference must be completed by **April 19, 2024**.

2. **Amendments to Pleadings.** Except for good cause shown, no motions seeking leave to add new parties or to amend the pleadings to assert new claims or defenses may be filed after **May 31, 2024**.

3. **Fact Discovery – Interim Deadlines**.

    a. Initial requests for production of documents and interrogatories must be served by **April 30, 2024**.

    b. All requests for admission must be served by **September 30, 2024**.

    c. All depositions, other than expert depositions, must be completed by **October 31, 2024**.

4. **Obligation to Supplement.** Supplemental disclosures under Fed. R. Civ. P. 26(e) shall be made promptly after the receipt of information by the party or counsel and, in any event, no later than the completion of fact discovery, unless good reason can be shown for why such information was not available.

5. **Final Fact Discovery Deadline**. All discovery, other than expert discovery, must be completed by October 31, 2024.

6. **Status Conference.** The parties propose that a status conference be held on or after October 31, 2024 pursuant to the schedule of the court. By October 29, 2024, the parties shall file a status report indicating the current status of the case, including whether the parties intend to seek expert discovery and/or intend to file any dispositive motions, whether the parties are interested in mediation, as well as any other matter relevant to the progress of the case.

7. **Expert Discovery**.

    a. Trial experts for the party with the burden of proof must be designated, and the information contemplated by Fed. R. Civ. P. 26(a)(2) must be disclosed, by **November 29, 2024.**

    b. Rebuttal trial experts must be designated, and the information contemplated by Fed. R. Civ. P. 26(a)(2) must be disclosed, by **January 17, 2025.**

    c. All trial experts must be deposed by **February 14, 2025**.

8. **Summary Judgment Motions**.

    a. Motions for summary judgment must be filed by March 21, 2025.

    b. Opposition to summary judgment motions are due twenty-one (21) days thereafter.

    c. Reply memoranda are due within fourteen (14) days of the filing of the opposition.

    d. Sur-reply memoranda are not permitted.

    e. In the case of cross-motions, the deadlines and page limits for the filings other than the Plaintiff's initial motion are set forth in the Session's Standing Order Regarding Motion Practice in Section D(2) unless specifically modified.

9. **Trial.** The parties will be ready for trial on June 2, 2025.

V.     **Certifications Pursuant to Local Rule 16.1(D)(3)**

Each party is separately filing the certification required by Local Rule 16.1(d)(3) prior to the Scheduling Conference.

VI.    **Trial by Magistrate Judge**

The parties have not consented to trial before a Magistrate Judge at this time.

VII.   **Settlement Proposals.** Plaintiff submitted a settlement demand on March 18, 2024, which was rejected by Defendant.

VIII.  **Mediation.** The parties have not agreed to mediation at this time.


**PLAINTIFF TONYA GIVENS,**

By her attorney,

Dated: March 27, 2024

*s/ Timothy J. Perry*
Timothy Perry (BBO # 631397)
Perry Krumsiek LLP
One Boston Place, Suite 2600
Boston, MA 02108
(617) 720-4300


**DEFENDANT MASSACHUSETTS INSTITUTE OF TECHNOLOGY,**

By its attorney,

*/s/ Scott A. Roberts*
Scott A. Roberts (BBO # 550732)
**Hirsch Roberts Weinstein LLP**
24 Federal Street 12th Floor
Boston, Massachusetts 02110
(617) 348-4340